**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CAROLYN DUNN LUKSZA, et al.,

    Plaintiff(s),

v.

TJX COMPANIES, INC.,

    Defendant(s).

2:11-CV-1359 JCM (GWF)

**ORDER**

Presently before the court is defendant TJX Companies, Inc.'s motion for summary judgment. (Doc. # 93). Plaintiffs Carolyn Dunn Luksza and Patricia Foser filed a response in opposition (doc. # 104) to which defendant replied (doc. # 112).

**I.     Background**

This action revolves around allegations that defendant failed to properly compensate plaintiffs for work in excess of eight hours a day and/or forty hours a week pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Plaintiffs allege that defendant misclassified them as exempt employees and argue that they are entitled to overtime pay.

Plaintiffs are both former "shift supervisors" at defendant's distribution center in North Las Vegas, Nevada. Despite their job title, plaintiffs claim that their jobs were so "rote, formulaic, and engineered," that they did not have any actual discretion or authority in performing their job duties, and thus were not properly classified as exempt executive/administrative employees pursuant to the FLSA.

**James C. Mahan**
**U.S. District Judge**

Plaintiffs do not dispute that they each had twelve or more full-time associates that reported to them. Additionally, plaintiffs freely admit that it was their job to evaluate the performance of the associates within their departments. However, plaintiffs seem to assert that, while acting as "shift supervisors," they only mechanically enforced defendant's excessively detailed decision tree of a "personal excellence program" and "engineered standards."

Defendant argues that plaintiffs were properly classified as exempt employees, and that they wielded actual executive authority over their departments and performed primarily administrative duties.

In the instant motion, defendant claims that it is entitled to summary judgment because there is no genuine dispute of material fact as to whether (1) plaintiffs fall within the "executive exemption" under 29 C.F.R. § 541.100(a) and (2) plaintiffs fall within the "administrative exemption" under 29 C.F.R. § 541.200(a), and thus plaintiffs are not entitled to any overtime pay.

**II.     Legal Standards**

*a. Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

Where a moving party's papers are insufficient to support a motion for summary judgment, or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

### *b. Requirements of the FLSA*

The FLSA requires that employers ordinarily pay their employees time and one-half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). The act provides an exemption from overtime pay for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An "employer who claims an exemption from the FLSA has the

1  burden of showing that the exemption applies." *Donovan v. Nekton, Inc.,* 703 F.2d 1148, 1151 (9th Cir. 1983).

"Because the FLSA is to be liberally construed to apply to the furthest reaches consistent with congressional direction, FLSA exemptions are to be narrowly construed against employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124-25 (9th Cir. 2002) (internal quotation marks and citations omitted).

Whether plaintiffs' activities as shift supervisors make them exempt from the overtime benefits of the FLSA is a question of law. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002) *(*citing *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 (1986)). How plaintiffs spent their working time is a question of fact. *Bothell*, 299 F.3d at 1124.

### III. Discussion

In order to qualify for the executive employee exemption under 29 C.F.R. § 541.100, defendant must show that plaintiffs were employees:

> (1) [That were] compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

Because defendant meets its burden of demonstrating that all of these criteria are met and plaintiffs do not raise any genuine issues of material fact, the court finds that plaintiffs fall within the executive employee exemption, and are therefore not entitled to overtime under the FLSA.

. . .

*(1) Compensation*

Defendant claims that plaintiff Luksza earned an annual salary of at least $33,000 throughout her entire employment as a shift supervisor and received a minimum weekly salary of at least $455. Likewise, defendant claims that plaintiff Foser earned an annual salary of at least $47,000 in 2011, and was paid that salary on a weekly basis. Plaintiffs do not refute these claims, and therefore the court finds that the minimum weekly pay requirement of 29 C.F.R. § 541.100 is met in this case.

*(2) Primary Duty*

29 C.F.R. § 541.102 states,

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

In their discussion of their primary duties as shift supervisors, plaintiffs merely list responsibilities from what appears to be an extensive job description booklet entitled "The Role of a Supervisor." However, when determining whether management is a "primary duty" of an employee, "courts cannot rely upon the plaintiff's or the employer's *description* of the plaintiff's position or authority; instead we must look at the plaintiff's *actual duties* to determine whether she qualifies for the executive exemption." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 503 (6th Cir. 2007) (emphasis in original) (internal quotations omitted).

Ironically, while clarifying that some of the discretion in their tasks was constrained by the standards set by defendant, plaintiffs very clearly indicate that their job responsibilities were almost entirely managerial in nature. Plaintiff Luksza makes an irrelevant distinction that her role was not to "direct" the associates that worked under her, but instead to "monitor" to ensure their compliance

with defendant's "personal excellence program" ("PEP") and "output per hour" standards. Similarly, plaintiff Luksza argues that she was responsible for investigating employee complaints, but only those of a "routine" nature. She also concedes that she interacted with the union stewards whenever she issued written or verbal warnings for her associates.

Plaintiff Foser acknowledges that it was her job to monitor the associates in her department to make sure they were complying with the "personal excellence program" and output per hour quotas. It was also her job to instruct associates as to how to apply the techniques in defendant's "best work methods" book. Plaintiff Foser's account discloses that she had discretion to plan out the daily work activities of her department, though her supervisors could alter these plans if they so desired.

Both plaintiffs made clear that, though they were not directly responsible for training their associates, they were responsible for ensuring the associates were sufficiently trained, and could have "coach trainers" assist associates when necessary.

Both plaintiffs state that they had authority to discipline the associates in their departments, but that they had to do so under a seven-step process laid out in the PEP. Far from the rigid and robotic process described by plaintiffs, this program merely provides general guidelines as to how to administer discipline, leaving significant room for a shift supervisor to strategically implement it in a way that will motivate the particular associate. For example, one portion of the PEP guidelines states "supervisor educates and informs the associate by providing feedback on information gained from the first meaningful observation of the associate."

Examining the text of this guideline, one can easily see the management skill that is required for successful implementation. A manager, knowing an associate's personality, could choose to present the information more or less sternly, convey compliments as well as criticism, or walk through items with greater detail depending upon the character of the associate.[1] In fact, it is easy to

---

[1] Plaintiff Luksza indicated that she would approach employees differently depending upon their personalities, "You may have an associate that is a little on the timid side, which probably may not completely understand the methods. So I would approach that associate in a different way than I would somebody else that I feel completely understands." (Doc. # 94-1 p. 14:3-7).

James C. Mahan
U.S. District Judge

- 6 -

1  imagine different managers taking very different approaches in applying these very same guidelines.

2  Similarly, plaintiffs' account of their job tasks merely underscores that nearly all of their job
3  responsibilities were managerial in nature. Plaintiffs consistently attempt to dispute the managerial
4  character of every one of their job responsibilities by pointing to ways in which their discretion was
5  constrained. However, just because one's authority is restricted by policies, guidebooks, and
6  supervisors does not mean that one is not a manager. Indeed, plaintiffs' account clearly indicates that
7  their tasks consisted of "directing the work of employees," "maintaining production or sales records
8  for use in supervision or control," "handling employee complaints and grievances," "disciplining
9  employees," "planning the work," and "providing for the safety and security of the employees or the
10 property," all of which fall within the category of "management" under 29 C.F.R. § 541.102.

11 Therefore, due to plaintiffs' own descriptions of their job activities, the court finds that
12 plaintiffs each had the primary duty of managing a department while they were employed as shift
13 supervisors.

14 *(3) Two or More Employees*

15 Defendant alleges and plaintiffs do not dispute that plaintiffs managed twelve or more full
16 time employees who reported directly to plaintiffs. Therefore the court finds that plaintiffs each
17 customarily and regularly directed the work of two or more other employees.

18 *(4) Authority to Hire and Fire*

19 Lastly, the court must determine whether plaintiffs had the authority to hire and fire
20 associates in their department, or at least that their recommendations were given weight by their
21 superiors.

22  To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with

---

Similarly, Plaintiff Foser indicated that she would approach underperforming employees differently if she suspected that they "just [weren't] aware that they might be doing something in a way that isn't as efficient" rather than being "an associate that maybe [she had] tried to work with repeatedly, and they're still doing the same thing." (Doc. # 94-2 p. 85:5-10).

**James C. Mahan**
**U.S. District Judge**

- 7 -

>which the employee's suggestions and recommendations are relied upon. . . . An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105.

Plaintiff Lukza indicates that, while she was working for defendant, she could not recall a single instance in which she recommended that one of the employees she supervised be terminated. She states that it was part of her job to recommend whether temporary associates be retained or terminated. While her account indicates that her recommendations were not always followed, during her deposition she could not specifically recall how often upper management followed her recommendations as to which temporary associates to retain. (Doc. # 94-1 p. 47:13-17).

During her deposition, plaintiff Foser gave an account of an employee that was terminated under her supervision. In this account, plaintiff Foser colloquially stated that she "termed" the employee herself. (Doc. # 94-2 p. 26:15). However, the context of her narrative indicates that she more likely recommended that the employee be terminated and her recommendation was subsequently approved by the upper management. Plaintiff Foser also stated that she could not recall a single time that her superiors did not approve a recommendation that one of her employees be disciplined.

Therefore the evidence on the record indicates that part of plaintiffs' duties was to provide recommendations regarding the termination of employees. Plaintiff Foser apparently thought of the recommendations of shift supervisors as so influential that her narrative included a statement indicating that she, herself, terminated an employee. While plaintiff Luksza's account is less clear, it still reflects that defendant consistently asked for her recommendation, and that she does not recall specifically how often her recommendations were followed. In light of this, the court finds that the evidence on the record indicates that plaintiffs' opinions as to terminating employees were given particular weight, and therefore the final criterion to determine whether the executive exemption applies is met in this case.

James C. Mahan
U.S. District Judge

1     Accordingly, because the court finds that plaintiffs were compensated on a salary basis at a rate of not less than $455 per week, that their primary duty in the role of shift supervisor was management of a recognized department of defendant's enterprise, that they customarily and regularly directed the work of two or more other employees, and that their suggestions and recommendations as to the hiring, firing, advancement, or any other change of status of other employees were given particular weight, the court holds that plaintiffs were properly classified as exempt employees pursuant to 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100(a).

    Because plaintiffs fall within the executive employee exemption, defendant had no obligation to grant them additional compensation for work performed in excess of eight hours per day and/or forty hours per week. *See* 29 U.S.C. § 213(a)(1). As such, the court will grant defendant's motion for summary judgment.

    Because the court finds that plaintiffs fell within the executive employee exemption, it need not address whether plaintiffs also fell within the administrative employee or combination exemptions pursuant to the FLSA.

**IV.  Conclusion**

    Accordingly,

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant TJX Companies, Inc.'s motion for summary judgment (doc. # 93) be, and at the same time hereby is, GRANTED.

    DATED January 28, 2014.

_____
UNITED STATES DISTRICT JUDGE